UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
FASHION WORLD, LTD.,

                                                                                                  07-CV-6108 (PKC)

            Plaintiff,

-against-

JEFF GREEN, ZIARI INTERNATIONAL, LTD.,
US MERCHANTS FINANCIAL GROUP, INC.,
THE MERCHANT OF TENNIS, INC., LISA
NUNZIATA and METAMORPHISIS, INC.,                   THIRD-PARTY
                                                                                          COMPLAINT

            Defendants,
     -and-

DARRYL MAYNARD, PING LEUNG and
ALEX CHANG,

            Additional Cross-Claim
            Defendants,
     -and-

BRUNO CONDI and FORTUNA VALENTINO,

            Additional Counterclaim
            Defendants.
-----------------------------------------------------------------X
FASHION WORLD, LTD.,

            Plaintiff/Counterclaim-Defendant/
            Third-Party Plaintiff,

     -and-

BRUNO CONDI and FORTUNA VALENTINO,

            Counterclaim-Defendants/
            Third Party Plaintiffs,
     -against-

JUSTIN L. ROSENBLATT, JR. a/k/a SKIP
ROSENBLATT and ROSENBLATT, INC.,

            Third-Party Defendants.

-----------------------------------------------------------------X

Plaintiff/Counterclaim-Defendant/Third-Party Plaintiff, Fashion World LLC, and Counterclaim-Defendants/Third-Party Plaintiffs Bruno Condi and Fortuna Valentino, by their undersigned attorneys, Ballon Stoll Bader & Nadler, P.C., complaining of the third-party defendants, allege as follows:

## THE PARTIES

1.      Third-party plaintiff Fashion World LLC ("FW") is and was at all relevant times a BVI limited liability company duly authorized to do business in the State of New York and maintaining its principal place of business at 1818 Bellmore Avenue, Bellmore, N.Y. 11710.  FW is and was at all relevant times the owner of the valuable trademark, *F by Fortuna Valentino*® (the "Mark").

2.      Third-party plaintiff Bruno Condi ("Condi") is a natural person and the sole officer and shareholder of FW, with a place of business at 1818 Bellmore Avenue, Bellmore, N.Y. 11710.

3.      Upon information and belief, at all times herein relevant, third-party defendant Rosenblatt, Inc. ("RBI") was and still is a New York corporation maintaining its principal place of business at 145 East 92nd Street, New York, New York 10128.

4.      Upon information and belief, at all times herein relevant, third-party defendant Justin L. Rosenblatt, Jr. a/k/a Skip Rosenblatt ("Skip") was and still is a natural person, a principal officer and shareholder of RBI, residing at 145 East 92nd Street, New York, New York 10128.  (Skip and RBI are referred to collectively herein as "Rosenblatt.").

## FACTS RELEVANT TO THE THIRD-PARTY CLAIMS

**Rosenblatt Becomes FW's Agent**

5. Condi was introduced to Skip in or around 1998.

6. From 1998 through 2004, Skip periodically contacted and communicated with Condi, keeping him abreast of certain market trends. Skip represented to Condi that he, individually and through RBI, could provide valuable "brand management" services to FW. In particular, Skip represented that he could identify potential licensees for the Mark and, over the years, periodically discussed with Condi potential licenses for the Mark.

7. Skip also told Condi, among other things, that his (Skip's) cousin, Jeff Green ("Green"), was the principle of a company in California engaged in the business of manufacturing, marketing and distributing apparel and accessories; that Green's company, Ziari International Ltd. ("Ziari") from time to time manufactured, marketed and distributed apparel and accessories as licensee under trademark license agreements; that Ziari had done so successfully for well known designers.

8. In or around late 2004, Skip told Condi that Ziari was actively seeking licenses for additional brands to add to its portfolio. Skip suggested to Condi that Green and Ziari might find *F by Fortuna Valentino*® to be an appropriate brand to lead its expansion. Skip and solicited FW to engage Rosenblatt as FW's agent with an aim toward assisting with the negotiation and securing in FW's behalf a license with Ziari for the manufacture, sale, marketing and distribution of *F by Fortuna Valentino*® branded merchandise.

9.  Condi viewed Skip's proposal as potentially beneficial to the brand and the Mark. FW therefore agreed to engage Rosenblatt as FW's agent. FW agreed that, if a license agreement for the Mark was entered into with Ziari as a result of Rosenblatt's efforts, Rosenblatt would be entitled to a fee equal to ten (10%) percent of any Royalties earned by FW on account of that license agreement.

10. Rosenblatt introduced Condi and FW to defendants Jeff Green ("Green"), Ziari International, Ltd. ("Ziari"), US Merchants Financial Group, Inc. ("US Merchants") and The Merchant Of Tennis, Inc. ("Tennis") (collectively, the "Green Defendants"). As a result, and with the assistance of Skip, FW and Ziari entered into a License Agreement dated as of January 26, 2005 (the "License") whereby Ziari was granted a <u>limited</u> license for the exploitation of the Mark. A copy of the License is annexed to the Complaint as Exhibit A.

**Ziari's Non-Compliance and Failed Attempts to Renegotiate the License**

11. From the outset, Ziari was either unable or unwilling to provide sales information to FW on a timely basis. Condi was led to believe that the delays to be the result of ordinary start-up difficulties and technological deficiencies. Condi repeatedly expressed to Skip his frustration at the lack of compliance and instructed Skip to communicate that frustration to Green and Ziari in FW's behalf and to demand compliance with the License terms.

12. Ziari's efforts to renegotiate the terms of the License began as early as September 2005. The following e-mail exchange, copies of which are annexed hereto as Exhibit 1, illustrates the Condi's ongoing frustration:

September 26, 2005, 7:28 a.m.
From Condi to Skip

Dear Skip, I am very disappointed with the fact that I have been deceived. ….At this point, I will not ask anymore, I will wait for the October 15 date of the audited report and I also ask you not to ask me anything as you will not find me available for any requests that are outside of what is clearly written in the agreement. Best wishes, Bruno Condi.

September 26, 2005, 8:54 a.m.
From Skip to Condi

Bruno, there is no excuse for my not forwarding reports to you. I have rough figures and want to only give you accurate numbers. I have asked Jeff for actual figures, not just "about" numbers…..Skip.

September 26, 2005, 9:02 a.m.
From Skip to Green
Forwarded to Condi September 29, 2005, 5:24 a.m.

Jeff,…. I had lunch with Bruno yesterday. He is agreeable to change the royalty rate, but would like figures before he agrees to final change. I said we had shipped about 1 million thus far, and we should do about 10 million for the next year. Please advise real numbers so we can finalize this deal. Bruno and I will come to LA to sit with you- hopefully second week of October….Pleas [sic] get me the hard numbers ASAP…. Skip

September 29, 2005 1:21 p.m.
From Green to Skip
Forwarded to Condi on September 29, 2005 at 1:41 p.m.

DEAR SKIP: I HAVE MY ATTORNEY WORKING ON THE CHANGE TO THE ROYALTY AS WELL AS I WILL GET HIM THE VOLUME AS I HAVE A FREE MOMENT…BY THE TIME YOU TWO COME IN OCTOBER WE SHOULD HAVE EVERYTHINGTHAT BRUNO WANTS TO YOU. JEFF

September 30, 2005 9:58 a.m.
From Condi to Skip

Dear Skip, As far as I concerned, no sales reports were received and no negotiations took place. <u>I want to be clear as I have always been. I see no reason for any attorney to change an agreement when nothing was decided upon.</u> Bruno [underscoring added]

> **September 30, 2005, 10:08 a.m.**
> **From Skip to Condi**
>
> that is true- after seeing reports- then we talk.  Skip
>
> **October 11, 2005, 6:44 p.m.**
> **From Condi to Skip**
>
> Hi Skip, I am back Milano..still have not received any sales reports. Bruno.
>
> **October 17, 2005**
> **From Condi to Skip**
>
> Hi Skip, I did not get any sales reports even today…..it is beyond the date in which the reports were supposed to come in (October 15).  <u>It is a shame that the agreement is breached at the very first opportunity.  I will not go to LA and not discuss any matter until I see the sales report, the payment of royalties for the period ending in October 15 and the orders for the period ending on March 15, 2006.  I am sorry, but enough is enough.</u>  Bruno. [underscoring added].

13.    Condi finally met with Green and Skip in Los Angeles in March 2006, the primary objective being to elicit timely compliance with Ziari's sales reporting obligations. Condi expressly rejected the Green Defendants' proposal for reduction of the percentage royalty rate under the License.

14.    In April 2006, Skip confirmed to Condi that there was no agreement in place for reduction of royalties.  The following e-mail exchange, copies of which are annexed hereto as Exhibit 2, took place:

> **April 20, 2006**
> **From Skip to Green.**
> **Forwarded by Skip to Condi on April 29, 2006, 1:36pm**
>
> Jeff, I asked last week about the quarterly reports for Fortuna – April 15. Bruno is back from Europe and asked about the report – he is ready to agree to the new terms starting after April 15th. He also wanted to know how sales were going. Hope all is well –talk to you soon.  Skip.

6

> April 29, 2006, 8:40pm
> From Condi to Skip
>
> Dear Skip, Thank you for the update. I am disappointed because, once again, I was promise [sic] the sales report by April 15, then by the end of April, etc. and it never came. Evidently even though I visited Jeff in LA it did not make any difference. <u>I noticed in your email that you mention that I "am ready to agree to the new terms". I have never said that. I have only said that I am willing to listen and think about it, if and only if I would get the sales report timely, the samples timely and the projections. None of which has happened so I am not even willing to listen at this point in time. Sorry, but you will clearly understand that the basis for a negotiation are just non existing.</u> Have a great trip to Florida and Japan and we will keep in touch by email. All the best, Bruno [underscoring added]
>
> May 1, 2006
> From Skip to Condi
>
> <u>I never said you had agreed, I told Jeff that you were considering his offer, but wanted to have all the facts-</u>I have asked him again-why 30 days late. Have a great trip, we'll talk when you return. Skip [underscoring added]

**Additional Breaches of Contract Discovered**

15. In early 2007, Condi and FW began to notice irregularities in Ziari's royalty statements. Specifically, Ziari began, paying royalties to FW at the rate of 2.5%, or one-half of the contractual rate of 5%.

16. FW also learned that Ziari (a) solicited orders from, and sold the licensed products to, retailers which were not specifically authorized under the License, (b) concealed sales from FW, thereby decreasing its apparent royalty obligation to FW and (c) otherwise engaged in acts and practices in violation of FW's contract and property rights.

7

### Legal Action Commenced Against the Green Defendants

17. In June 2007, FW commenced this action against the Green Defendants. A copy of the Complaint is annexed hereto as Exhibit 3. FW also sought injunctive relief against the Green Defendants to prevent ongoing trademark infringements. The following summarizes the facts alleged against the Green Defendants:

(a) The Green Defendants failed to pay royalties equal to 5% of net sales, as prescribed by the License. Instead, the Green Defendants unilaterally reduced the percentage royalty to 2.5%.

(b) The Green Defendants failed to accurately report sales of licensed products, and concealed sales of licensed products. Defendants' motivation was twofold: Firstly, to avoid payment of royalties on the sales; secondly, to conceal from Plaintiff sales to retailers who were not "authorized distribution channels" under the License.

(c) The Green Defendants ignored their obligations to seek approval of designs prior to release of the products into the stream of commerce.

(d) The Green Defendants manufactured and sold products outside the scope of the limited categories licensed to Ziari.

(e) The Green Defendants refused to provide FW with access to their books and records for inspection purposes as required under the License.

18. In addition to injunctive relief, Plaintiff seeks relief under the Lanham Act for trademark infringement, counterfeiting and trademark dilution. Plaintiff also interposes claims sounding in breach of contract, fraud and breaches of duty.

19. In response to FW's Complaint and application for preliminary injunction, the Green Defendants asserted, among other things, that two "oral modifications" of the

License were agreed upon in March and September 2006. More specifically, the Green Defendants allege that FW orally agreed (a) on or about March 24, 2006, that the commissions payable under the License would be reduced from 5% to 2.5% and (b) on or about September 28, 2006, that Ziari's "authorized distribution channels" were expanded to include additional retailers. A copy of the Green Defendants' Answer is annexed hereto as Exhibit 4.

**Skip's False Declaration**

20. The Green Defendants obtained and filed with this Court on July 5, 2007, Skip's Declaration, in which Skip falsely corroborates the Green Defendants' baseless defenses. A copy of Skip's undated Declaration is annexed hereto as Exhibit 5.

21. Contrary to the statements made by Skip in that Declaration, and as more particularly expressed above, neither Condi nor FW agreed to any modifications to the License.

22. In fact, three weeks prior to executing that Declaration, Skip acknowledged responsibility to FW for an additional royalty of 2.5%. On June 13, 2007 Skip wrote to Condi:

> **1) It looks as if we are not going forward with F by Fortuna Valentino if you do not agree to a reduction of royalty.**
> **2) Rosenblatt will pay the difference between 2.5 and 5 as Jeff will not--I thought we had agreed as they had been paying at 2.5 for the past 6 months so I will take full responsibility for difference** [underscoring added]

## THIRD-PARTY CLAIM I

23. Rosenblatt, as FW's agents with respect to transactions with the Green Defendants, were duty bound to FW, as fiduciaries, to undertake all acts in furtherance of the agency with the utmost care and loyalty to FW.

24. Rosenblatt were required, by virtue of the fiduciary relationship, to act in furtherance of FW's interests and to avoid self-dealing and conflicts of interest.

25. By virtue of the agency, Rosenblatt was duty bound to follow FW's instructions with regard to the subject matter of the agency.

26. Rosenblatt, by virtue of the relationship and the agency, was duty bound to disclose to FW all material facts concerning the License and the performance of the Green Defendants thereunder and to fairly, fully and accurately represent and report to FW all information concerning the License and the Green Defendants' performance thereunder.

27. Rosenblatt breached their foregoing duties to FW in that they intentionally and willfully:

(a) purported to enter into agreements in FW's behalf which were not authorized by FW.

(b) acted in direct contravention to the instructions of FW;

(c) failed to notify FW of the true facts concerning their interactions with the Green Defendants;

(d) entered into agreements which were contrary to the financial and property interests of FW;

(e) engaged in self-dealing, placing their own interests in the transactions with the Green Defendants above the interests of FW;

(e) misrepresented material facts to FW with respect to the Green Defendants' performance under the License

28.  If FW is found liable to the Green Defendants in any amount on account of the Counterclaims, then Rosenblatt is liable to FW for full indemnification.

### THIRD-PARTY CLAIM II

29.  The allegations contained in paragraphs 1 through 27 of this Third-Party Complaint are realleged and repeated as if fully set forth herein at length.

30.  If the Court denies recovery to FW on its Complaint by reason of alleged "oral modifications" to the License, then Rosenblatt is liable to FW for any and all amounts which would have been due FW absent those "oral modifications."

### THIRD-PARTY CLAIM III

31.  The allegations contained in paragraphs 1 through 27 of this Third-Party Complaint are realleged and repeated as if fully set forth herein at length.

32.  Rosenblatt is liable to, and must indemnify, FW, Condi and Valentino in the amount of any and all awards herein rendered in favor of the Green Defendants or any one of them and against FW, Condi and/or Valentino.

33.  Rosenblatt is also responsible for reasonable attorneys' fees incurred by FW in connection with the prosecution of this action and defense of the Green Defendants' claims.

## THIRD-PARTY CLAIM IV

34. The allegations contained in paragraphs 1 through 27 of this Third-Party Complaint are realleged and repeated as if fully set forth herein at length.

35. By reason of Rosenblatt's multiple breaches of fiduciary duty and violation of the agency, FW is entitle to recover from Rosenblatt all amounts heretofore paid to Rosenblatt as compensation with respect to the License, and any damages suffered by FW as a result of Rosenblatt's breaches of duty, which amounts are believed to exceed the sum of $5,000,000.00.

## THIRD-PARTY CLAIM V

36. The allegations contained in paragraphs 1 through 27 of this Third-Party Complaint are realleged and repeated as if fully set forth herein at length.

37. Rosenblatt breached their contract with FW.

38. FW performed all conditions and obligations on its part pursuant the contract.

39. As a result of Rosenblatt's breaches of contract, FW is entitled to recover and any damages suffered by FW as a result of Rosenblatt's breaches, which amounts are believed to exceed the sum of $5,000,000.00.

## THIRD-PARTY CLAIM VI

40. The allegations contained in paragraphs 1 through 27 of this Third-Party Complaint are realleged and repeated as if fully set forth herein at length.

41. Rosenblatt promised and agreed to pay to FW a sum equal to the difference between percentage royalties due at the contractual rate of 5% under the License and royalties paid at the reduced rate of 2.5%.

42. Rosenblatt agreed to joint and several liability with Ziari with respect to percentage royalties to the extent of 2.5% of sales under the License, total royalties not to exceed 5%.

43. Rosenblatt guaranteed to FW, in writing, payment of percentage royalties of up to 2.5% to the extent that royalties paid by the Green Defendants were less than 5%.

44. By virtue of the foregoing, FW is entitled to recover of Rosenblatt an amount equal to 2.5% of the Green Defendants' sales in accordance with the License.

WHEREFORE, Plaintiff demands Judgment in its favor and against the Third Party Defendants, jointly and severally, as follows:

(a) An Order and Judgment, Declaring that Rosenblatt is bound to indemnify Plaintiff, Condi and Valentino with respect to any amounts awarded the Green Defendants on account of their Claims.

(b) If the Court finds that the Agreement was modified as alleged by the Green Defendants, an Order and Judgment Declaring that Rosenblatt is bound to pay to Plaintiff all damages and recoveries to which Plaintiff would have been entitled absent those modifications.

(c) An Order and Judgment requiring that Rosenblatt disgorge and pay to Plaintiff all monies received by Rosenblatt as compensation for services rendered to Plaintiff.

(d) A money Judgment in such amount as is determined by the Court to adequately compensate Plaintiff on account of Rosenblatt's breaches of contract and breaches of Fiduciary Duty.

(e) A money judgment in the amount of reasonable attorneys' fees expended by Plaintiff in connection with the prosecution and defense of these proceedings.

(f) An award of Plaintiff's Costs and Disbursements.

(g) An award of such other and further relief as to the Court may seem just and proper.

Dated: New York, New York
       November 7, 2007

BALLON STOLL BADER & NADLER, PC
*Attorneys for Plaintiff*

By: _____
    Susan Schneiderman (SS9840)
1450 Broadway
New York, New York 10018
212-575-7900